10r 425
117 808

---

Margaret Priestley and others v. William Bisland and another.

As a general rule, whenever the mail is resorted to as the means of conveyance of a notice of protest, the notice must be sent to the post office nearest to the residence of the party, addressed to him at his domicil, or usual place of residence.

Where a member of a partnership causes the share of his partner to be seized and sold to satisfy a debt due to him individually, and becomes the purchaser, he must be pre-

sumed to have known of the claims against the partnership, and to have purchased the property, subject to the rights of its creditors, to exact the payment of the partnership debts ; the latter cannot be prejudiced by any acts of the partners between themselves.   C. C. 2794.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

SIMON, J.   The claims set up by the plaintiffs against the defendants, as ordinary partners in the ownership and cultivation of a plantation in the parish of Terrebonne, consist: 1st, In the sum of $813 74, as the amount of a draft drawn by Bisland & Shields, to the order of T. B. Shields, on one John C. Harrison, their merchant in New Orleans, dated 12th of January, 1842, and payable one year after date.   This draft, endorsed by Shields, was accepted by Harrison, and subsequently protested for non-payment.   2d.   In the sum of $233 76, the amount of an account for hardware, alleged to have been purchased for Bisland & Shields' plantation.   The plaintiffs had also set up another claim upon a draft of $1901 53, drawn by T. R. Shields to the order of the defendants, endorsed by the latter, in the hand writing of said Shields, and protested for non-payment; but the plaintiffs having discontinued their suit as to said draft, withdrew this part of their demand.

The plaintiffs further allege in their supplemental petition, that the consideration of the draft of $813 74, and the articles detailed in the account, were purchased and actually employed for the benefit of the partnership ; that they ought to be paid for out of the partnership property, by privilege and preference ; that William Bisland, one of the partners, has come into possession of the whole of the partnership property, in the manner therein set forth, and in satisfaction of a private debt due by Shields to said Bisland ; and that the said property now owned by said Bisland, is liable, in his hands, to the payment of the whole of the partnership debts, although he be personally liable only for one half thereof.   They pray that judgment may be rendered against the defendants jointly, for the amount sued for, and that the partnership property may be seized and sold to satisfy the same, &c.

The defendants severed in their answer.   Bisland, after plead-

ing, first, the general issue, avers that he never authorized his co-defendant to draw any bills in his name; admits the bills sued on to have been drawn whilst the partnership was in existence; and denies that the partnership ever was benefited thereby, &c.

The defendant Bisland's agreement, with regard to his answers to the interrogatories propounded to him by the plaintiffs, goes to establish that Shields was the sole manager and administrator of the plantation cultivated in partnership; that Shields received the whole amount of the revenues; that his indebtedness to Bisland, proceeded from accounts rendered by the merchants showing the balance received by Shields from the crops, &c.; that the latter's portion of the property was sold by virtue of an execution issued on a judgment duly obtained for the amount of Shield's notes in favor of Bisland; and that said Bisland bought the property, at the second exposure, at 12 months credit, leaving still a balance due him by said Shields of $1500, or more.

Judgment was rendered below in favor of the plaintiffs, against the defendants jointly, for the aggregate amount of the draft and account; and further ordering that the plantation and slaves, heretofore jointly owned by said defendants, and of which Bisland is now the sole proprietor, he having purchased the half of his partner's at a marshall's sale, be seized and sold to satisfy the same. From this judgment, the defendant Bisland, after a vain attempt to obtain a new trial, has appealed.

It is a first to be noticed, that it is admitted in the record that the draft of $813, and the account of $233, originated in purchases made by Shields for the use of the plantation of Bisland & Shields; and there appears, therefore, to be no difficulty as to the indebtedness of the partnership in the amount of said account. With regard to the draft, its consideration being thus admitted, the liability of the defendant Bisland, will depend upon another point, which is the principal object of this controversy, to wit, that of sufficient notice given to the drawers of the draft of the dishonor thereof.

It appears by the evidence, that Shields' residence is in the parish of Terrebonne, about three miles from a place called

Houma, where there is a post office. The notary states, in his certificate, that the notice of protest was sent, and addressed to *Bisland & Shields* (drawers), *parish of Lafourche Interior ;* and there being only one post office in Lafourche Interior, the latter must necessarily have been sent to the town of Thibodeauxville, which is the seat of justice of that parish, and shown by the evidence to be about sixteen miles from Houma. But the testimony also shows that, "*by directions of Mr. Shields, the witness Harrison,* (Bisland & Shields' merchant, and the acceptor of the draft,) *always addressed his letters to Bisland & Shields at Thibodeauxville, although he understands that the Houma post office is nearest to the plantation on which Shields resides ;*" and hence it has been contended that the notice is sufficient to bind the defendants, to whom it was forwarded in the manner by them directed.

The evidence further shows, that another witness sends his letters for planters in Terrebonne, to Thibodeauxville ; that he does so, *because he does not send by mail, but by steamboats,* to Thibodeauxville; and because it is quicker, and the planters receive their letters sooner that way than by mail. Another witness testifies, also, to a custom adopted there by Terrebonne planters, of receiving their business letters from New Orleans by steamboats to Thibodeauxville ; and he states that the mail from New Orleans to Houma, passes through Thibodeauxville, and goes twice a week to Houma. He adds also, that at one time he received Shields' letters by his instructions, and that he speaks altogether of letters written by merchants at New Orleans to the planters, and *sent by water conveyance,* and *not by mail.*

We think that, notwithstanding Shields' directions to his merchant, Harrison, the notice of protest in this case is insufficient to bind the defendant Bisland. It cannot be pretended that any separate notice was given to him ; he resided in Mississippi, and his liability must rest entirely upon the legality of the notice addressed through the post office to Bisland & Shields, parish of Lafourche Interior. This parish was not the usual place of residence of the partners ; nor can it be considered, under the evidence, as the safest and most proper mode of conveying letters by mail from New Orleans to the planters residing in the

parish of Terrebonne, where there is another post office, as one of the witnesses states. The custom of sending letters to Thibodeauxville, for the Terrebonne planters, relates according to his testimony, to water conveyances, and not to the mail ; and this shows, that the effect of Shields' directions to his factor, must be limited to the cases in which the correspondence is conveyed by steamboats. But it has not been shown that any person was ever authorized to take Shields' letters out of the post office at Thibodeauville, and to send them to him by private conveyance ; and hence it must necessarily result, that his letters would remain longer in the latter post office than at Houma, which is only three miles from his residence. Be this as it may, we cannot consider the direction to Harrison, as the selection of a post office in regard to all other persons and purposes, particularly as such direction does not appear clearly to extend to the letters to be conveyed by mail. The channel of the post office having been used in this case, the letter conveyed should not be stopped on its way to its destination, unless in consequence of the positive instructions of the person to whom it is directed, and this should not be left uncertain or doubtful. We have repeatedly held, as a general rule, that whenever the mail is resorted to as a means of conveyance of a notice of protest, such notice should be sent to the post office nearest to the party's residence ; and that it should be addressed to him at his domicil, or usual place of residence. 3 Rob., 164. This case, under the evidence, cannot be taken as an exception to the rule ; and we see no reason why it should be relaxed in favor of the plaintiffs. Furthermore, it is at least doubtful, if the defendant Bisland, who lives in Mississippi, can be bound by the notice sent to his ordinary partner in Terrebonne ; but we think it unnecessary to express any opinion on this point.

Under this view of the question of notice, the plaintiffs' claim must be reduced to the sum of $233 76, due by the defendants jointly ; and with regard to this sum, another question occurs— is the property of the partnership, now entirely owned by Bisland, liable in his hands for its payment ?

We think it is. Bisland, who was one of the partners, took the property in payment of a part of his individual debt ; but he

must be presumed to have been cognizant of the claims standing against the partnership, and to have purchased the property subject to the rights of the creditors, who cannot be prejudiced by any act of the partners between themselves. Uuder art. 2794 of the Civil Code, *the partnership property is liable to the creditors of the partnership, in preference to those of the individual partner, but the share of any partner may, in due course of law, be seized and sold to satisfy his individual creditors, subject to the debts of the partnership.* It is perfectly clear from this text of the law, that when Bisland caused his partner's share to be seized and sold to satisfy his individual claim, and became the purchaser of the said share, he bought it subject to the payment of the partnership debts; and if so, he stands with regard to the creditors of the partnership, in a situation very similar to that of a third possessor of property mortgaged, who is bound either to abandon the property to the exercise of the creditor's right of action, or to pay the debt. How this would be, however, with regard to an innocent third person, becoming the purchaser of partnership property, without notice, is a different question, which it is now unnecessary to consider; but we are satisfied as to Bisland, who had either a real or constructive notice, that he cannot object to the preference which the law gives to the partnership creditor who finds the partnership property in his possession. The doctrine recognized by the 2794 art., of the Civil Code, is fully developed by Pardessus, Droit Commercial, Vol. 4, No. 1089, whose opinion on this subject is in concordance with that of Troplong, Priviléges at Hypothèques, Vol. 2, No. 434.

It is, therefore, ordered and decreed, that the judgment of the Commercial Court, so far as it condemns the defendant, Bisland, to pay jointly with his co-defendant, the sum of $813 76, as being the amount of the draft sued on, and orders the partnership property to be seized and sold to satisfy said sum, be annulled and reversed; that said judgment be affirmed in all other respects, with costs in the District Court; and that those in this court be paid by the plaintiffs and appellees.

*L. Janin*, and *S. L. Johnson*, for the plaintiffs.

*R. N. Ogden*, and *A. N. Ogden*, for the appellant.